LOUIS H. YARRUT, Judge ad hoc.
Plaintiff sues his employer and its compensation insurer for total and permanent disability as a result of an alleged accident which occurred on or about July 18, 19S6, pursuant to the provisions of the Louisiana Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., and LSA-R.S. 22:655.
The employer, Neeb Kearney & Company, Inc., will be referred to herein as the employer and the Fidelity & Casualty Company of New York as the insurer.
Employer is engaged on the river front in loading and unloading maritime cargoes for shipment and transhipment. Plaintiff was employed as a common laborer. He contends that, while lifting a 100-pound sack of flour, he suffered pains and was unable to continue work, went home shortly thereafter, and was taken to Charity Hospital, where a surgical operation disclosed a perforated duodenal ulcer. Defendants resist the claims on three grounds:
(1) That plaintiff did not suffer an accident while performing the duties of his employment;
(2) That, if plaintiff did suffer an accident, the employer was not notified within six months but more than one year thereafter ;
(3) That, if plaintiff did suffer such an accident, he has fully recovered and, if now unable to do similar work, the disability is without connection with or related to his employment.
In rendering judgment for defendant, the District Judge gave as his reasons:
“From a medical standpoint, the Court is not convinced that a traumatic perforation of an ulcer is impossible. However, from the evidence adduced in connection with the failure of the plaintiff to notify his employer of the alleged accident and the testimony of the witnesses regarding the alleged occurrence, the Court is convinced that Daniel Cutno did not suffer a perforation of a pre-existing ulcer during the course and scope of his employment or under circumstances which would allow a compensation award. The Court is further of the opinion that from the testimony of the plaintiff himself, as well as of others, any disability which he may have is one which stems from natural causes and not from injury while performing his work for the defendant employer.
“However, if it were conceded that a compensable accident occurred (which the Court does not hold) then the Court must state that from the more trustworthy evidence in the record it must conclude that the ‘notice’ contemplated under the act was not given to the employer, Neeb Kearney & Company, Inc., or its agents.”
With reference to the first issue, to-wit: whether the employee suffered an accident while in the course of his em *496 ployment, it. must first be conceded that the law is very clear that, in the course of employment, any injury suffered initially, or the aggravation of a pre-existing injury, is compensable under the Workmen’s Compensation Law. The facts on this phase while somewhat disputed, medically and otherwise, are for the most part primarily these: Plaintiff had a previous history of a perforated ulcer and heart trouble for which he had been hospitalized. On the day in question he was working in a gang, loading and unloading freight, as a common laborer. He testified that, while lifting a heavy sack of flour, he suffered pain. Shortly thereafter, he went home in a friend’s automobile, driven by himself, and while at home suffered so much that he had to be rushed to the Charity Hospital that afternoon. Surgery disclosed a perforated duodenal ulcer.
Members of his work gang (who were related or life-long friends) testified that plaintiff complained he suffered pain and was unable to work. His principal witness was one McCary, who admitted having signed a statement reading as follows :
“On or about July 18, 1956, which was a Wednesday, I was working in foreman ‘Rodney’ gang at Poydras St. Wharf, Sections 28 to 16 unloading 100 pound bags of flour from a boxcar into a handtruck and placing them on the wharf. Daniel Cutno who I call ‘Joe’ and I were working in the same car on the same end. His wife is my first cousin. Only one man lifts the bag of flour. About 10:00 A.M. I noticed Joe had slowed down for about five minutes and I asked him what was wrong and he told me he had a pain in his stomach. I told him to take it easy for awhile as I thought he was getting overheated. He went to the wharf and got a drink of water and returned shortly. He kept working slow and about 11:00 A.M. he told me his stomach was hurting him more and said he was going home. He left about 11:30 A.M. and only got about a block away from his house in Willie Irvin’s car which he borrowed. I was told the next morning about 8:00 A.M. that he was operated on. I told Mr. Rodney, the foreman, that morning, Thursday, that Joe was operated on as he was feeling sick while at work the day before. The next day, Friday, Mr. Rodney asked me how Joe was coming along. Joe did not report his illness to Mr. Rodney. Ernest Cutno, his nephew, told me that Joe was operated on for bursted appendix and an ulcer. Joe had ulcers before he took sick on the job but never complained of an appendix attack. Joe and I were raised together in Hilleryville, La. near Burnside, La. I know he was not drinking before he took sick. Joe has not worked since he was operated on.
“I have read the above statement of one and one-half pages and it is true and correct.
“(Signed) B. McCary, Jr.”
McCary, while on the stand, unsuccessfully sought to recant and repudiate his written statement, by means of one excuse or another, principally pretended ignorance.
■ Dr. Louis Ochs, Jr., a Gastro-Enterologist, testified for the plaintiff and Dr. Mayo Emory testified for the defendants.
Both doctors concede that recognized medical authorities agree that “the perforation of a duodenal ulcer may be precipitated by straining at stool, coughing, vomiting or other vigorous exertion.”
Dr. Ochs, though opining that the perforation was due to a lifting of the sack of flour, examined plaintiff for the first time a year after the injury and based his opinion solely on what plaintiff told him. Dr. Emory testified he could not state positively that the lifting of the sack caused the perforation because the perforation could just as well have been coincidental *497 with natural erosion of the tissue. In fact, statistics prove that more ulcers are perforated while the patient is inactive, than when he is active.
In Cordray v. Standard Oil Co. of Louisiana, 9 La.App. 458, 121 So. 220, 221, the facts were that the claimant testified he suffered a perforation and then descended a 64-foot ladder, walked over and took 'a drink of water, and returned to the derrick “before beginning to get sick.” After reviewing the medical evidence at great length, the Court decided in favor of the defendant on the primary basis that the perforation of a duodenal ulcer would cause pain and suffering which would prevent the activities engaged in by the man after the incident complained of. The Court said:
“ * * * On the contrary, in view of the testimony of the physicians that duodenal ulcer ruptures by the ulcer eating through the tissue or the sloughing off of the tissue of the duodenum in the natural progress of the ulcer, as well as by strain, and that intense pain and total disability instantaneously follow, we conclude that the cause of the rupture was not strain from the lifting of the sheave wheel or a slip of petitioner’s foot or a jerk of the sheave wheel, as contended for by plaintiff, but to the sloughing off of the tissue of the duodenum in the natural course of the progress of the ulcer.”
If the perforation had taken place here as plaintiff would have us believe, it is incredible that he could have driven au automobile home. The perforation could easily have occurred while he was driving home, or after he reached his home, completely disconnected from his employment.
In the case of Landry v. Phoenix Utility Co., 14 La.App. 334, 124 So. 623, this Court dismissed plaintiff’s case, holding that the hemorrhage from a duodenal ulcer, admittedly the. cause of employee’s death, could not be produced by external trauma.
In Mitchell v. Employers’ Liability Assur. Corporation, La.App., 5 So.2d 152, 153, a carpenter’s widow claimed his death resulted from a ruptured duodenal ulcer and was compensable; the deceased had complained of his stomach hurting and had stopped working during the morning. He went to the First Aid Department of his employer for relief, complaining of his stomachache and when the pain persisted, was taken to the hospital where he was operated on and later he died. The Court was convinced from medical testimony that:
“ * * * whenever a rupture or breaking through occurs it causes immediate shock and severe pain and that it would have been impossible for deceased to continue any kind of work after such an attack.”
In similar context is the case of Burks v. Central Surety & Ins. Co., La.App., 6 So. 2d 45, but the latest case is Rider v. Trinity Universal Insurance Co., La.App., 99 So.2d 825, 829. Plaintiff was lifting a roll of roofing paper when he claims to have felt a sharp pain. He worked for sometime thereafter at lighter duties, leaving to go home about an hour earlier. The medical testimony in that case was to the effect that the lifting episode could have no connection with a rupture, nor did it cause nor aggravate the ulcer. The Court held:
“We feel that the preponderance of the medical testimony is to the effect that the lifting episode was in no way the cause of the peptic ulcer, nor the aggravation thereof. We therefore feel that the petitioner has failed to show any causal connection between the alleged disability and the alleged accident.”
In view of the fact that the perforation of this ulcer can take place at any time, even while the patient is at perfect rest, and the evidence is convincing that he did not suffer while actually lifting a sack of flour but while in repose, and only suffered the real effects of it after he had gone home, the conclusion is inevitable that plaintiff did not suffer an accident, or an injury, or an *498 aggravation of a previous injury or disability during the course of his employment.
It is not sufficient that one merely takes sick while employed. He must, by a preponderance of the evidence, establish that his condition was caused while he was in the course of his employment, not merely that he was on the job at the time.
As we said in Kraemer v. Jahncke Services, Inc., 83 So.2d 916, 918:
“It is now well settled that to constitute an accident within the meaning of our Workmen’s Compensation Law in cases where the worker employee entails regular heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way while the laborer is performing his usual and customary heavy duties and disability results it is compensable. Stiles v. International Paper Co., [La.App.], 39 So.2d [635], 636, and the cases therein cited.”
And we held that:
“From the established jurisprudence a rule can be formulated that an accident must either cause or aggravate a pre-existent heart ailment before recovery can be had, and the aggravation must be due to some stress or strain, physical or mental, primarily suffered by the employee while performing his work due to excessive labor, fright, trauma, or any other cause that could aggravate the pre-existing condition; nor is it necessary that there be any great amount of physical strain or unusual exertion in the performance of the duties. It is only necessary that sufficient mental or physical strain occur during the performance of the duties, whether it be heart trouble or any other organic ailment. Nor is it necessary that the result of such stress or strain develop at the time or at the scene of employment if the stress and strain were sufficient to have caused the aggravation ultimately resulting in disability or death. The proof, of course, of the causal connection always rests with the plaintiff.”
Recovery is not denied here on the ground that an ulcer, perforated because of stress or strain, is not compensable, but because the evidence is clear that plaintiff did not suffer the perforation while actually engaged in the physical lifting of flour sacks as evidenced by the following:
(1) He was in repose at the time he complained of pain to McCary.
(2) Had he suffered the perforation while so engaged he would not have been able to remain calmly on the job and drive an automobile home, but would have been writhing in agony and totally helpless as he was found at home by his neighbor (Hamilton) who took him to Charity Hospital that afternoon in a helpless condition.
(3) That the pain he complained of on the job did not necessarily result from ulcer perforation, because pain from ulcers occurs and recurs without the exertion of any stress or strain by the simple process of erosion of the tissues until the erosion is complete and perforation takes place, which can and does happen more often when the patient is in .repose.
(4) Had plaintiff believed he suffered an accident he and McCary would have reported it promptly to the employer, since both had previous experience with this same employer relative to compensation procedure and recovery.
It is not sufficient that the perforation may have occurred while at work. The duty is upon plaintiff to prove by a preponderance of the evidence that it did so occur and while under stress or strain.
As we further said in Kraemer v. Jahncke Services, supra, were we to allow recovery under the facts and circumstances of this case, the compensation statute would not protect the employer against the possibility of becoming a mere insurer of his employee.
*499 With reference to want of notice, the testimony is disputed that the co-workers of plaintiff informed their supervisor, Mr. Rodney B. Schumert, that plaintiff felt sick, went home and láter was operated upon. Mr. Schumert did admit that months after the incident he was told casually that plaintiff was “operated on” hut the only actual notice was given eleven months after the incident by the attorney for plaintiff who notified defendants.
With plaintiff’s and McCary’s experience in reporting and receiving compensation from employer, the fact plaintiff did not formally notify employer in this case indicates to us that he knew the pain he suffered was the usual recurrent pain connected with his affliction, but unconnected with his work. Plaintiff’s claim resulted when he went to the Legal Aid Bureau eleven months later for assistance to collect accident insurance. When learning of this incident, the Legal Aid Bureau referred plaintiff to the attorney who now represents him here. In retrospect, it seems this claim is an afterthought and a retracing of steps to “pin” liability on someone and the employer was the most likely choice.
As a result of the lack of notice, the employer claims to have suffered prejudice. We think the evidence is clear that sufficient notice was not given to put defendants on guard that plaintiff suffered his disability while on the job. The mere statement that an employee went home ill and was taken to the hospital for an operation, casually made to his supervisor months after the occurrence, was not sufficient notice to have put them on guard, particularly when the method of operation of the employer is considered. The employer is engaged in loading and unloading cargoes for vessels on the far-flung river front in New Orleans, with 200 men employed each day in gangs of six to eight. The gangs are “shaped up” by union representatives and can consist of four or more men. A laborer may work in one gang today and another gang tomorrow, either "for the same employer or a different employer, so that there would be no closeness of relationship that would put the employer on notice that a man went home sick, particularly since sickness could be due to so many things. In 1956 the employer had more than 86 compensation claims and one more claim to report to its insurer would have been no trouble. Certainly the employer is prejudiced when the accident complained of is a perforated ulcer, since it is difficult to determine just where and when the perforation took place, and the employer is thereby denied an opportunity to make a prompt and thorough investigation, and provide prompt and competent medical attention.
The judgment of the District Court is correct and is affirmed.
Affirmed.
JANVIER, J., absent.