HAWTHORNE, Justice.
 

 Daniel
 
 Cutno,
 
 alleging that he is
 
 totally
 
 and permanently disabled from the effects of an accident suffered by him on July 18, 1956 in the course of his employment with Neeb Kearney & Company, sued his employer and its insurer to recover workmen’s compensation on that basis under R.S. 23 :- 1021 et seq. The case is now before us on a writ of certiorari granted upon his application to review the judgment of the Orleans Court of Appeal affirming the judgment of the district court dismissing his suit. See Cutno v. Neeb Kearney & Company, La.App., 103 So.2d 494,
 
 499.
 

 *
 

 
 *833
 
 Prior to the alleged accident Cutno worked as a freighthandler on the riverfront in New Orleans. While working in this capacity for Neeb Kearney on the morning of July 18, 1956 and while in the process of transferring hundred-pound sacks of flour from a boxcar to a handcar, Cutno alleges that around eleven o’clock in the morning he began to feel severe pain in his stomach. The record shows that he had been having pain in his stomach or abdomen more or less severely for about five years — an “ulcer history” in medical terminology. This particular morning, however, while Cutno was lifting the heavy flour sacks and stacking them on the handcar, his stomach pains became so intense that he had to stop work and sit down. He stayed around the docks for an hour or so feeling steadily worse and finally borrowed a fellow workman’s car and drove himself home. There he was in such acute agony that around one-thirty p. m. a neighbor lifted Cutno into his car and drove him to Charity Hospital where he was operated on early the next morning for a perforated duodenal ulcer. As is customary in ulcer perforation cases, the surgeon who operated simply opened the abdominal wall and sewed up the hole in the stomach to stop the bleeding, leaving some parts of the ulcer on the wall of the duodenum. Cutno was discharged from the hospital a week after the operation but continued to suffer from pains in his stomach to such a degree that he was unable to do any kind of work until August of 1957, over a year later, when he got a job as a porter in a bank. From the medical testimony offered in this case it appears that this closure operation rarely cures an ulcer, and that well over half of the patients have to undergo surgery later if post-operative medical treatment fails to heal it. When this case was tried in November of 1957 Cutno was still having pain.
 

 It is Cutno’s position in this suit that the heavy work which he was doing for his employer caused or contributed to the perforation of his duodenal ulcer. Defendants, the employer and its insurer, argue that there is no causal connection between the work Cutno was doing and the perforation, and thus deny that a compensable accident occurred. They also seek to have the suit dismissed on the ground that the employer was not notified of the injury within six months thereof. In the alternative they argue that even if Cutno suffered an injury within the meaning of the workmen’s compensation act, he has now fully recovered therefrom, and if he is now disabled his condition is unrelated to his employment.
 

 The district court dismissed the suit on the ground that Cutno did not suffer a perforation of a preexisting ulcer under circumstances which would allow a compensation award; that even if it be conceded that a compensable accident occurred, the requisite notice was not given to the employer; and that any disability which Cutno may
 
 *835
 
 presently have stems from natural causes unrelated to
 
 his
 
 employment. The Court of Appeal’s affirmance of the lower court judgment was grounded on its conclusion that Cutno’s ulcer had perforated after he left the scene of employment, that there was no causal connection'between the work the employee was doing and the perforation, and that the employer had been prejudiced by Cutno’s long delay in giving notice of his injury. See Cutno v. Neeb Kearney & Company, La.App., 103 So.2d 494.
 

 We will dispose of the preliminary plea of delayed notice before discussing the merits of the case.
 

 R.S. 23:1291 provides that no proceeding to recover compensation shall be maintained unless notice of the alleged injury has been given to the employer within six months after the date of the injury. R.S. 23 :1295 specifies that failure to give notice or delay in so doing shall not be a bar to proceedings under the workmen’s compensation act if “it is shown that the employer, or his agent or representative, had knowledge of the accident, or that the 'employer has not been prejudiced by such delay or want of notice.”
 

 It is conceded by all parties to this suit that the employer received no notice of Cutno’s injury until June 5, 1957, roughly eleven months after the date on 'which it occurred. The record further shows that although the employer’s labor superintendent knew that Cutno had gone home sick and had been operated on, no one at the company knew that Cutno was contending that his perforated ulcer was an “injury” which he had received at work and hence compensable. However, in spite of the fact that the employer had neither timely notice, nor knowledge, of the injury here being sued on, Cutno’s delay in giving notice cannot be urged successfully by defendants as a bar to these proceedings for the reason that the employer has not shown that it has been prejudiced by the five months’ delay. In brief filed in this court counsel for Neeb Kearney contends that the employer was prejudiced (a) because the doctor who originally treated Cutno was not available when notice of the injury was finally given to the employer eleven months after its occurrence. There is nothing to substantiate this claim of prejudice in the record in this case, no subpoena or testimony to show that the employer tried to get in touch with the doctor and failed, ^and hence we can give no consideration to this first allegation of prejudice. Next, counsel contends that Neeb Kearney was prejudiced (b) because the employer had no opportunity to examine and treat the injured employee at the.time the injury occurred, and.Cutno’s own doctor at the trial stated that the freighthandler had had inadequate post-operative care, and (c) because an investigation- made some eleven months fol,
 
 *837
 
 lowing an accident suffers in comparison with an immediate investigation at the time of the happening. See Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311; Hinton v. Louisiana Central Lumber Co., La.App., 148 So. 478.
 

 We do not think that the remote possibility that the employer might have given Cutno better medical treatment or the suggestion that an earlier investigation of the incident would have been of more benefit to the employer constitutes material prejudice. In Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792, 795, the Second Circuit Court of Appeal discussed the notice provisions of the Workmen’s Compensation Statute in these'words:
 

 “Construction of these provisions should be liberal in favor of the plaintiff; and unless it be clearly proven that because of the delay in giving notice of the accident the rights of the employer and/or his insurer have been thereby prejudiced, the bar should not be enforced. In this case, notwithstanding the long and unusual delay in giving notice of the alleged accident, the record is quite clear that no one has been really prejudiced thereby. The insurer’s adjuster made the same sort of examination and contacted the same witnesses he would have, had knowledge of the accident and ensuing disability therefrom been imparted to him much earlier. * * * It is not shown that defendant has been deprived of the testimony of a single witness or of the benefit of any documentary evidence because of the delay. So far as we are able to see, the trial of the case, a year after the alleged accident, was, for all practical purposes, conducted in the same manner and was participated in by the same persons as would have happened had trial been months earlier.”
 

 Having concluded that petitioner’s delay in giving notice is not a bar to this suit because there has been no showing that the employer has been prejudiced thereby, we will proceed to a consideration of whether Cutno experienced an injury within the meaning of the Workmen’s Compensation Law as interpreted by the courts of this state when his duodenal ulcer perforated on July 18-19, 1956.
 

 It is now well settled in Louisiana that the legal requirements are present to constitute an accident and an iijjury is compensable under our workmen’s compensation statute where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. See Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 and cases there cited.. Nor is it. necessary that the adverse result of such stress and strain develop at the time or at the .scene of employment if the stress and strain were suffi
 
 *839
 
 cient to have caused, contributed to, or accelerated the physical breakdown ultimately resulting in disability or death. See Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792.
 

 Jackson v. Travelers’ Ins. Co., 180 La. 43, 156 So. 169, 170, is very similar to the instant case. In Jackson the employee was engaged in loading 200 pound cross-ties on a boxcar. He and a coworker picked up a tie and raised it to about the height of a man’s shoulder when suddenly the employee dropped his end of the tie and complained that he had hurt his side. Soon afterwards he spat up blood and had a hemorrhage of the stomach. Five days later he died of a stomach hemorrhage. The Court of Appeal for the Second Circuit denied recovery on the ground that the death of the employee was directly due to active, progressive syphilis; that the ravages of the disease had so thinned the tissues of the veins in the walls of his stomach that a hemorrhage was liable to occur at any time, under any conditions, that it did occur while he was at work, but that it was not caused, activated, or materially accelerated by his work. This court granted certiorari, reversed the court of appeal judgment, .and allowed the employee’s widow and minor child to recover on the ground that “the fair preponderance of the medical testimony is to the effect that the accident caused by the heavy work hastened the death of the deceased, and that the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach that resulted fatally.”
 

 Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, 627, is another decision of this court which is apposite to the case at bar. There the employee, Hemp-hill, was engaged in laying tar paper on the roof of a small house and for this purpose carried four 100 pound rolls of tar paper up a 13 foot ladder to the roof, two of the rolls being carried up by him in the morning and two in the afternoon. Approximately 30 minutes after he had taken the last of the rolls to the roof, he came down the ladder wet with perspiration and sat down in the shade complaining of pains in the region of his heart. The pains got worse and after a few minutes the employee walked to the doctor’s office about a half mile down the road, where he was given medicine and sent home in a car. He died in the car on the way home, the cause of death being given as "improper function of his heart”. His widow’s suit against the employer to recover compensation was dismissed in the district court. The court of appeal affirmed, but we granted certiorari and allowed recovery on the ground that “the evidence shows that the strain on Hemphill’s heart because of the strenuousness of the work and the heated conditions under which he was working were the motivating causes of his death.”
 

 
 *841
 
 In the instant case, to recapitulate, the record shows that while stacking heavy-flour sacks on a handcar on the morning of July 18, 1956, Cutno suddenly felt such severe pains in his stomach that he was forced to stop working, that when the pains got worse Cutno borrowed a fellow worker’s car and drove to his home, that there his pains became so agonizing that he was put in a neighbor’s car and taken to Charity Hospital, where he was operated on about twelve hours later for a perforated duodenal ulcer.
 

 Although the medical testimony in this proceeding, as always, is conflicting, the weight of it is to the effect that the strain of heavy work can cause or hasten the perforation of a duodenal ulcer.
 

 Dr. Louis Ochs, Jr., of New Orleans, who testified for Cutno, is an expert in the field of gastro-enterology, or diseases of the gastro-intestinal tract. Dr. Ochs stated that strain can hasten the rupture of an ulcer and said that his view was based on his own observations and study and also on the opinions of the two leading authorities in the field — Bockus and Portis. Dr. Bockus, explained Dr. Ochs, is professor of gastroenterology at the University of Pennsylvania, and has written a three-volume work entitled Gastro-Enterology which is considered “the Bible” in that field. From volume 1, page 358 of Bockus’ work, Dr. Ochs read the following statement during the trial of this case:
 

 “A free perforation into the peritoneal cavity may occur in a duodenal ulcer owing to separation along adhesive planes following physical straining or trauma.”
 

 From Portis’ Diseases of the Digestive Tract, p. 449 (3d ed.), under the heading “Complications of Peptic Ulcer” Dr. Ochs read this statement:
 

 “The perforation may be precipitated by straining at stool, coughing, vomiting or other vigorous exertion.”
 

 Dr. Mayo Emory of New Orleans testified in the lower court for Neeb Kearney. Dr. Emory is a specialist in the field of internal medicine, which includes gastroenterology. He explained that it takes days or weeks for an ulcer beginning on the inner walls of the duodenum to eat through the surrounding tissue to a point where a perforation is imminent, that it often occurs when the patient is at rest, and he stated, “I don’t believe that we have any evidence to show that the person’s actual physical activities, mental activities influence the perforation.” However when he was asked by his own counsel whether he would say that Cutno’s perforation had no causal connection with his work, Dr. Emory refused to commit himself so categorically, and admitted, “I can’t prove that it didn’t, no sir.” Also, on cross examination when opposing counsel said, “Dr. Emory, assuming Mr. Cutno was in the process of lifting this sack of flour to his
 
 *843
 
 head level, and assuming there is a preexisting duodenal ulcer, is it your expert testimony that that particular act of lifting that sack had no causal relation whatsoever with the perforation?”, the doctor answered,
 
 “I
 
 don’t believe I can give you an opinion actually on this, because I don’t know.”
 

 We also notice from the record that Dr. Emory said during the course of the trial that he did not think it advisable for a man with a duodenal ulcer to work as a freight handler on the riverfront “because we just know that people who are under loads of mental emotion, physical loads, do not do well who have an ulcer background; that that’s their characteristic make-up, not to be in strenuous stimulation of any type.”
 

 We think that the preponderance of the evidence in this case shows that the strenuousness of the work that Cutno was doing for Neeb Kearney caused or hastened the perforation of his duodenal ulcer.
 

 Opposing counsel in this suit are greatly concerned as to exactly when the .perforation, or rupture, of the ulcer took place, counsel for petitioner, arguing strenuously that it occurred during the morning hours of July 18, 1956 while Cutno was piling the flour sacks on .the handcar, and counsel for the employer insisting that the perforation took place later in the day after Cutno had gone home. The Court of Appeal in its opinion in this case also laid great stress on this question. See Cutno v. Neeb Kearney & Company, La.App., 103 So.2d 494. We fail to see the relevancy of this line of reasoning. The issue as we see it is whether the work the employee was doing caused, or contributed to, or hastened the perforation. If it did, and we have found that it did, then it is immaterial whether the rupture took place at the scene of employment or elsewhere. Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792, 796, is a case in point. There the employee suddenly felt a pain running down from his shoulder while he was pulling one end of a cross-cut saw being used to saw a large log. Although he was constantly thereafter in pain, he finished work that day and did not go to a doctor until the pain became unbearable three days later, when it was discovered that his right lung had collapsed. He brought suit for compensation on the theory that “the incipiency of the disabling disease was when he first felt the pain while pulling the saw”. One of the defenses to the action' was that the accident, if any, occurred three days after he left work. Having found that the heavy work the employee was doing caused'or contributed to the collapse of the lung, the Court of Appeal answered the defense set out above thus:
 

 “But defendant contends that even if plaintiff was struck by the pain in his right shoulder and chest on November
 
 *845
 
 20th, as by him alleged, this.does not constitute an accident within the Workmen’s Compensation Law; that, the accident, if any, occurred when straining to lace his shoe the morning of November 23rd.
 

 “It reasonably appears that from the time the first pain was felt by plaintiff until he was overwhelmed the morning of November 23rd, the disease was in steady prog1ress towards the end. At no time during this interim was plaintiff free of the pain that undoubtedly emanated from the escapage of air from the lung that was slowly but certainly approaching collapse. It required this time, in this particular case, for the completion of the accident that began when the saw pinched the afternoon of November 20th.”
 

 In asking this court to affirm the. lower court judgments dismissing this suit, counsel for the employer relies on five court of appeal decisions involving ulcer perforations : Cordray v. Standard Oil Co. of La., 2 Cir., 1928, 9 La.App. 458, 121 So. 220; Landry v. Phoenix Utility Co., Orleans 1929, 14 La.App. 334, 124 So. 623; Mitchell v. Employers’ Liability Assur. Corp., La.App., 2 Cir., 1941, 5 So.2d 152; Burks v. Central Surety & Insurance Co., La.App., 2 Cir., 1942, 6 So.2d.45; and Rider v. Trinity Universal Ins. Co., La.App., 1 Cir., 1958, 99 So.2d 825 certiorari granted March 17, 1958, in all of which recovery was denied. Counsel states: “Defendants rely upon them as previous expressions, of the Courts of this State that the condition which plaintiff suffered does not lend itself to traumatic origin or aggravation, that it is of a nature to cause, at its onset, severe, excruciating pain, and that there is no causal connection between trauma and the perforation of an ulcer — certainly not unless some direct blow to the affected area had occurred.”
 

 It is true that there is a great deal of medical testimony in the cited cases which supports the position taken in this case by the employer and its insurer. However, the medical testimony in the instant suit, as we have said above, is to the effect that the strain of heavy work can cause of hasten the perforation of a duodenal ulcer. Furthermore, Dr. Ochs testified that although generally a person falls to his knees and clutches his abdomen in agony whe.n his ulcer perforates, and is, immediately prostrate and unable .to work or even move about, this is not universally true. He said under interrogation by. counsel for defends ants that Cutno’s ulcer could have perr forated while he was stacking the flour sacks, even though the pain in his stomach and abdomen did not become so excruciat.ing as to-be disabling until a couple of hours -later, and that he had seen similar cases him'self. However, as we stated above, we do not think it is material to a decision in this case to determine the moment when perforation occurred.
 

 
 *847
 
 Having concluded that Cutno has had a compensable accident, we come next to the question of the extent and duration of his disability therefrom. He alleges that he is totally and permanently disabled, but the employer and its insurer contended at the trial of this case that even if Cutno had suffered an injury within the meaning of the workmen’s compensation act, he had fully recovered therefrom, and if he was still disabled his condition was unrelated to his employment. They argue in this connection that the injury Cutno complains of is a perforation, which has been sewed up, and that Cutno is now in the same situation he was in during the years preceding the perforation, that of a man with a duodenal ulcer.
 

 Having dismissed this suit on the ground that Cutno had not suffered a compensable accident and had delayed too long in giving notice to his employer, the trial judge had no occasion to rule on the extent and duration of - the disability incurred by Cutno because of the perforation of his ulcer. For obvious reasons the Court of Appeal decision does not touch on this issue. This court generally does not take cognizance of facts upon which the courts below have not acted and render a decision on those facts. Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449 (on rehearing).
 

 Therefore, the judgment of the district court dismissing this suit, which was affirmed by the Court of Appeal for Or-, leans Parish, is set aside, and this case is hereby remanded to the district court for further proceedings on the question of the amount of compensation due the employee, reserving to all parties the right to file such additional pleadings and evidence as may be relevant to a final disposition of the matter. The costs in the Court of Appeal and in this Court are to be paid by defendants.
 

 *
 

 In its decision in this case the court of appeal inadvertently said that “Plaintiff’s claim resulted when he went to the Legal Aid Bureau eleven months later for assistance to collect accident insurance.” This is an error. The record in this case shows that it was the Lawyer’s Referral Service, operated under the supervision of the New Orleans Bar Association, which put Cutno in touch with his attorney.