# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1201


**WANETTA IVORY**

**VERSUS**

**SOUTHWEST DEVELOPMENTAL CENTER**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 03-08331
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

**REVERSED IN PART, AFFIRMED AS AMENDED IN PART, AND
RENDERED.  ADDITIONAL ATTORNEY FEES AWARDED FOR WORK
PERFORMED ON APPEAL.**


**PETERS, J., concurs in the result except that he would award $5,000.00 as
attorney fees for work performed on appeal.**


Wayne J. Fontana
Christopher M. McNabb
Fontana, Seelman & Landry, LLP
1010 Common Street, Suite 2300
New Orleans, LA   70112
(504) 566-1801
COUNSEL FOR:
Louisiana Association of Self-Insured
Employers (LASIE), Amicus Curiae

**Michael B. Miller**
**Post Office Drawer 1630**
**Crowley, LA   70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Wanetta Ivory**

**Sylvia M. Fordice**
**Assistant Attorney General**
**556 Jefferson Street, 4th Floor**
**Lafayette, LA   70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Southwest Developmental Center**

AMY, Judge.

In this workers' compensation dispute, the claimant's employer appeals the workers' compensation judge's determination that the claimant was paid on an hourly basis. Further, the employer argues that the workers' compensation judge erred in calculating the weekly compensation rate. The employer also questions the amount of penalties and attorney fees awarded. For the following reasons, we reverse in part, affirm as amended in part, and render. Additional attorney fees are awarded for work performed on appeal pursuant to the claimant's answer.

## Factual and Procedural Background

The record indicates that the claimant, Wanetta Ivory (Ivory), began working for the defendant, Southwest Developmental Center (Southwest), on July 8, 2002 as a resident training specialist trainee. On January 23, 2003, Ivory was injured while in the course and scope of her employment. On November 17, 2003, Ivory filed a disputed claim for compensation form in which she claimed that she was not paid workers' compensation benefits at the correct rate; that she was "not paid weekly comp at all times"; that Southwest violated La.R.S. 23:1127; and that she was entitled to penalties and attorney fees. In an amended disputed claim form, Ivory also alleged that Southwest failed to reinstate workers' compensation benefits and that she did not receive proper vocational rehabilitation. Ivory sought legal interest on all amounts due.

Following a hearing on April 26, 2007, the workers' compensation judge ordered that Southwest pay Ivory "weekly compensation benefits in the amount of $191.67 per week, beginning January 24, 2003, subject to a credit for all weekly compensation benefits previously paid by defendant." Southwest was also ordered to pay:

a $2,000.00 penalty for failure to properly calculate **WANETTA IVORY**'s average weekly wage, a $2,000.00 penalty for failure to restart workers' compensation benefits, a [sic] $1,650.00 for late payment of weekly compensation benefits and attorney fees in the amount of $10,000.00, all amounts to bear interest at the legal rate.

Southwest now appeals, asserting the following assignments of error:

1.  The workers' compensation court committed manifest error in finding the claimant's weekly compensation rate is $191.67, as the evidence does not support such a finding.

2.  The workers' compensation court committed manifest error in awarding the claimant $5,650.00 in penalties.

3.  The workers' compensation court committed manifest error in awarding the claimant $10,000.00 in attorney fees.

Ivory answered the appeal, seeking additional attorney fees for work performed on appeal.[1]

**Discussion**

*Hourly Versus Annual Wages*

Southwest argues that the workers' compensation judge erred in finding that Ivory is an hourly employee. According to Southwest, Ivory is not paid on an hourly basis but is employed full-time at an annual base salary of $13,561.60. Southwest notes that Ivory works 2,080 hours a year or fifty-two forty hour work weeks a year. It asserts that she is paid a bi-weekly salary of $521.60.[2] Southwest argues that "all 2,080 hours of compensation would include compensation for hours actually worked, sick leave, annual leave, holiday pay, and special pay. An employee could conceivably fall below 2,080 hours of compensation only if the claimant has not

---

[1] Ivory's answer included a prayer for additional attorney fees for work performed below. This assignment was not briefed; therefore, it is abandoned pursuant to Uniform Rules - Courts of Appeal, Rule 2-12.4.

[2] Southwest arrived at this figure by dividing Ivory's annual salary of $13,561.60 by twenty-six.

2

accrued sufficient leave balances to take either sick leave or annual leave." In sum, Southwest argues that "[t]his court should conclude that the pay structure as utilized by [Southwest] in this case is synonymous to an annual salary since the fringe benefits, which are paid absences in this case, have been included in the claimant's bi-weekly pay for 80 hours."

Conversely, Ivory avers that she is an hourly employee, and Southwest admitted in its answers to interrogatories that she was paid $6.52 per hour. According to Ivory, if she "was being paid on an annual salary, her pay checks should have been the same for each pay period[,]" which she contends they were not.

Louisiana Revised Statutes 23:1021 provides in pertinent part:

(12) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as:

(a) Hourly wages.

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]

. . . .

(c) Annual wages. If the employee is employed at an annual salary, his annual salary divided by fifty-two.

In her oral reasons for ruling, the workers' compensation judge explained:

I do find that Ms. Ivory is, essentially, an hourly employee. And the reason for that is everything is broken down into hours, and while you can extrapolate from that, at the end of the day a State employee is paid for two thousand eighty hours per year as opposed to an annual salary, which, I believe, is actually a salary that an employee is paid regardless of the number of hours worked. You are paid this salary to perform this job on a yearly basis. So I do make that finding that Ms. Ivory was an hourly employee.

And I gave y'all another case that I had worked on recently which made the distinction and noted the distinctions made in the case law

3

about the difference between an hourly employee versus an annual employee. The hourly employee and, I believe I found in this [sic] other cases, the salaried employee are both entitled to have their annual leave and sick leave calculated as a fringe benefit. I had made a distinction based on the Moses versus Grambling case which was referred to in the Burns versus St. Frances Cabrini Hospital case, Third Circuit case at 830 So.2d 572 that the distinction between a salaried employee and an hourly employee make a difference when it comes to holiday pay. But having found that Ms. Ivory was an hourly worker, that distinction would not apply.

"Whether or not plaintiff is an hourly employee involves a factual determination which is subject to the manifest error standard of review." *Ryder v. Garan's Inc.*, 98-192, p. 4 (La.App. 3 Cir. 6/3/98), 716 So.2d 55, 57, *writ denied*, 98-1814 (La. 10/30/98), 727 So.2d 1162. After reviewing the record, we find no manifest error in the workers' compensation judge's determination that Ivory was an hourly employee.

Here, Ivory was paid on a bi-weekly basis, but her pay varied as she occasionally worked overtime. Furthermore, Ivory entered remuneration statements into evidence which showed her gross salary for each bi-weekly pay period. Ivory's earnings and paid absences were divided into categories and showed that she was paid by the hour. Given these factors, we conclude that the evidence supports the conclusion that she was paid on an hourly basis. *See Adams v. Dependable Source Corp.*, 06-1331, p. 5 (La.App. 1 Cir. 5/4/07), 961 So.2d 1183, 1187 (wherein the first circuit determined that the claimant was an hourly employee, stating that a "review of Adams' payroll checks indicate he was paid by the hour and that [his employer] admitted this to be true. While the payroll information was broken down into several categories, including mileage, per diem, hourly wage, and stop-delay time, the total was then converted to an hourly figure.")

This assignment has no merit.

4

*Average Weekly Wage - Benefits*

Southwest contends that if fringe benefits, *i.e.*, annual leave, sick leave, compensatory time, and holiday pay are to be added to Ivory's average weekly wage, the "statutory provisions fail to explicitly provide a mechanism for computing the amount of fringe benefits to be included in computing the claimant's average weekly wage. It would appear, therefore, that the period of evaluation would mirror the time period considered when the claimant's average weekly wage is determined." According to Southwest, the workers' compensation judge erred in accepting Ivory's calculation of 160.5 hours of fringe benefits insofar as Ivory did not indicate the time period for which these hours were accumulated.[3] Southwest maintains that these hours "represent more than the four weeks preceding the accident."

Ivory rejects Southwest's argument that "the fringe benefit should be determined based upon the four weeks prior to her injury." She alleges that because fringe benefits are not hourly wages, they should be calculated under La.R.S. 23:1021(12)(d),[4] which uses the twenty-six week period prior to the accident.

In her oral reasons for ruling, the workers' compensation judge stated:

> So, essentially, I am finding that the leave documented, compensatory leave, annual leave, sick leave, holiday leave especially

---

[3] We note that at the hearing, counsel for Ivory introduced remuneration statements into evidence, indicating that:

I do have it, Judge, in the corner I have a-hundred-and-six-point-five. That is my calculation of the hours [of fringe benefits]. I'm not saying that that's true and correct, but if you do it and it comes out the same, then it probably is, okay?

[4] Louisiana Revised Statutes 23:1021(12) provides in pertinent part:

(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week. . . .

are fringe benefits. And the reasoning behind that, of course, is it is a benefit that the employee gets as opposed to an hourly worker who does not have that benefit. If he misses a day of work he does not get paid. An hourly worker with the benefit does get paid, and it is taxable through his salary. So, I do accept the one-hundred-and-sixty-point-four hours . . . point-five hours as fringe benefits.[5]

We find no merit in Ivory's contention that fringe benefits should be computed under La.R.S. 23:1021(12)(d) insofar as this provision addresses "other wages," which courts have determined to include gross earnings such as sales commissions and tips. *See Stegall v. J&J Exterminating*, 94-1279 (La.App. 3 Cir. 3/1/95), 651 So.2d 400 and *Dupont v. Holiday Inn of Jennings*, 96-684 (La.App. 3 Cir. 12/11/96), 685 So.2d 525. Given our finding that Ivory is an hourly employee, the fringe benefits used in the four full weeks preceding her accident on January 23, 2003 are included in the relevant calculations. *See* La.R.S. 23:1021(a)(i).

The remuneration statements reveal that in the four full weeks preceding her accident, Ivory used sixteen hours of paid absences. Although Ivory earned and accumulated several hours of leave during that time, these are not included in the average weekly wage calculation. Louisiana Revised Statutes 23:1021(12)(f), which was added in 1999 and amended in 2001, provides:

> (f) Income tax. In the determination of "wages" and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not taxable to an employee for federal income tax purposes; however, any amount withheld by the employer to fund any nontaxable or tax-deferred benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage including but not limited to any amount withheld by the employer to fund any health insurance benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage.

---

[5] We note that Ivory indicated that she was owed 106.5, not 160.5 hours of fringe benefits.

In *Sterling v. Asplundh Tree Expert Co.*, 03-266, p. 9 (La.App. 3 Cir. 10/1/03), 856 So.2d 125, 130, *writ denied*, 03-3017 (La. 1/30/04), 865 So.2d 79, this court stated that "[a]ny fringe benefit that an employer provides is taxable and must be included in the recipient's pay unless that fringe benefit is specifically excluded by the law. EMPLOYER'S TAX GUIDE TO FRINGE BENEFITS PUB. 15-B (Dept. of the Treasury, Internal Rev. Serv., Jan. 2003)." Excluded benefits include items such as accident and death benefits, group-term life insurance coverage, meals, and moving expense reimbursements. *Id*. We held in *Sterling* that because "[p]aid holiday and vacation fringe benefits are not the type of fringe benefits excluded from income taxation[,]" the workers' compensation judge did not err in including these benefits in the claimant's average weekly wage.

Here, the record does not indicate that Ivory received any fringe benefits which were specifically excluded from income taxation. With regard to the sick leave, annual leave, and compensatory time, Tina Pousson (Pousson), Supervisor of Human Resources at Southwest, testified that when they are used, they are reflected on Ivory's paycheck, and she pays taxes on them. Because these benefits are taxable when they are used, we find that they are included in Ivory's pay and the calculation of her average weekly wage.

With regard to holidays, Pousson testified that "whenever [employees] have a set schedule they are mandated to work that particular schedule regardless if it's a holiday or not." She further testified that instead of getting paid overtime, the "employee receives compensatory time for working on a holiday." This testimony indicates that Ivory would be paid for holidays, regardless if she worked on those days. Therefore, paid holidays are not included in the calculation of Ivory's average

7

weekly wage.  *See Anderson v. Eckerd Corp.*, 04-1053, p. 3 (La.App. 1 Cir. 5/6/05), 915 So.2d 901, 903 (wherein the first circuit held that "[w]here holiday and vacation pay are already figured in a claimant's salary whether or not he works on those days, in the calculation of a claimant's average weekly wage, addition of amount of holiday and vacation pay equates to adding those amounts into the calculation twice, which is clearly wrong.")

*Average Weekly Wage - Calculation*

In its brief, Southwest argues that when calculating Ivory's average weekly wage, this court should use the formula provided in La.R.S. 23:1021(12)(a)(ii) as opposed to the formula used in La.R.S. 23:1021(12)(a)(i).  In support of its argument, Southwest references the fact that in the four full weeks prior to her accident, Ivory worked all but sixteen hours.  Furthermore, it notes that "[a]lthough . . . Ivory was regularly scheduled to work 40 hours per week, she sometimes worked fewer hours, taking sick leave, annual leave, or K-time.  She also was required to take leave without pay in some instances. . . . Ivory had unpaid absences totaling 56.3 hours since her employment commenced on July 8, 2002."  At the hearing, Southwest contended that Ivory's average weekly wage was $260.80 and that it, therefore, paid her $173.87 in weekly compensation.

"The calculation in La.R.S. 23:1021[(12)](a)(ii) is to be used only if the employee 'regularly, and at his own discretion, works less than forty hours per week for whatever reason.'"  *Haynes v. Williams Fence & Aluminum*, 01-26, p. 6 (La.App. 3 Cir. 7/25/01), 805 So.2d 215, 220.  In *Haynes*, this court discussed the application of this provision and referenced 1 H. Alston Johnson, III, *Workers' Compensation*

8

*Law and Practice* § 322, in 14 Louisiana Civil Law Treatise (3d ed.1994) wherein the author stated:

> It is unclear what the word "regularly" may mean in this context. If, in the critical four weeks preceding injury the employee took a few hours off for sick leave or annual leave, this should not be considered "regularly" working fewer than forty hours. He should be entitled to calculation on the basis of his ordinary forty-hour work week. On the other hand, if he takes a job which is nominally a forty-hour-a-week job but consistently conducts himself so that he works only 35 hours in a week, then perhaps his wages should be calculated under this provision. He should not be able to convert a full-time job (for which the employer is paying premiums on that basis) to a part-time job with full protection of wage earning capacity, at least without the employer's consent.

After reviewing the record, we find that Southwest did not prove that Ivory regularly, at her own discretion, worked fewer than forty hours per week. The remuneration statements provide the number of hours Ivory worked from July 21, 2002 to January 19, 2003. On occasion, Ivory worked overtime, and, for the bi-weekly pay period ending January 5, 2003 (four weeks prior to the accident), she worked a total of sixty-four hours. For the two weeks immediately preceding the accident, Ivory worked two forty-hour weeks. When absent from work, Ivory used sick leave, annual leave, and compensatory time. Although Ivory was not always physically present, she was paid her regular hourly wage insofar as the leave constituted paid absences. Thus, as long as Ivory had leave available to her, she was paid for a forty-hour work week. Accordingly, we find that pursuant to La.R.S. 23:1201(12)(a)(i), Ivory is entitled to the presumption of working forty-hour weeks for the four weeks preceding the accident.

Multiplying Ivory's $6.52 hourly wage by forty hours results in an average weekly wage of $260.80. Thus, her weekly compensation rate is $173.87.[6]

---

[6] Louisiana Revised Statutes 23:1221 provides in pertinent part:

Accordingly, we find that the workers' compensation judge erred in determining that the weekly compensation rate is $191.67.[7]

*Penalties*

Southwest argues that the "workers' compensation judge committed manifest error in awarding $5,650.00 in penalties." It notes that in her oral reasons for ruling, the workers' compensation judge assessed penalties at a higher amount than what was specified in the signed judgment. Southwest contends that the workers' compensation judge erred in assessing a penalty for its alleged untimely payment of benefits. Southwest points out that "[t]here was no testimony taken regarding the source of the handwritten note on Claimant's Exhibit 1 that the check [for the period of July 19, 2004 to August 1, 2004] was sent to the employer in error or the effect that had on claimant's timely receipt of the check." Additionally, Southwest alleges that "the assessment for a $2,000.00 penalty for an alleged incorrect calculation of the average weekly wage is clearly wrong in this case." According to Southwest, "only a penalty of $3,100.00 should be assessed, *i.e.*, $1,100.00 for late payment of two checks and $2,000.00 for failure to timely reinstate benefits."

---

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

(1) Temporary total.

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

Pursuant to La.R.S. 23:1221(1)(a), sixty-six and two-thirds percent of $260.80 is $173.87.

[7] There is no indication in the record as to how the workers' compensation judge arrived at this figure.

Louisiana Revised Statutes 23:1201(A) provides: "Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident[.]" Pursuant to La.R.S. 23:1201(B), "[t]he first installment of compensation payable for temporary total disability . . . shall become due on the fourteenth day after the employer or insurer has knowledge of the injury . . . , on which date all such compensation then due shall be paid." Subsection F of La.R.S. 23:1201, which was amended by 2003 La.Acts. No. 1204, § 1 and became effective August 15, 2003, provides in pertinent part:

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

The imposition of penalties and attorney fees may be avoided if the employer can provide factual and medical evidence to reasonably controvert the claim for workers' compensation benefits. *Smith v. Town of Olla*, 07-384 (La.App. 3 Cir. 10/3/07), 966 So.2d 1165. "The employer must have an 'articulable and objective reason to deny

benefits at the time that it took the action.'" *Id.* at 1178 (quoting *Landry v. Furniture Center*, 05-634, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La.4/28/06), 927 So.2d 290.) An award of penalties will not be overturned on appeal absent manifest error. *Id.*

During the hearing, the following exchange occurred regarding the assessment of penalties:

JUDGE MORROW:

Calculation of average weekly wage Two Thousand Dollars. The first check was late, Two Thousand Dollars. The check that was nine days late, Six Hundred and Fifty Dollars. The check that was eleven days late, A Thousand Dollars.

MR. MILLER [Ivory's Counsel]:
No, Judge. You're giving them too much money. I appreciate that, but the two of them together were twenty days. That's A Thousand Dollars for --

JUDGE MORROW:
A Thousand Dollars --

MR. MILLER:
-- both of them.

JUDGE MORROW:
-- total. I'm sorry.

MR. MILLER:
That's all right.

JUDGE MORROW:
And then failure to reinstate benefits, Two Thousand. So it's a total of Seven Thousand.

We note that the judgment contained a penalty award in the amount of $5,650.00. When there is a conflict between the workers' compensation judges's oral reasons and the formal, signed judgment, the latter governs as "oral reasoning forms no part of the judgment." *LaRocca v. Bailey*, 01-618, p. 12 (La.App. 3 Cir. 11/7/01),

799 So.2d 1263, 1271. We will individually address the penalties that Southwest challenges on appeal.

Incorrect Compensate Rate

The workers' compensation judge assessed a $2,000.00 penalty for Southwest's failure to pay Ivory $191.67 per week in compensation. As set forth above, we find that the correct compensation rate is $173.87, the amount that Southwest was paying Ivory. At the hearing, Shelton testified that Ivory's "average weekly wage was reported at Two Sixty Eighty. . . . Her comp rate was One Seventy-three point Eighty-seven." Given this testimony, we find that the $2,000.00 penalty associated with the compensation rate was manifestly erroneous.

First Payment of Benefits

Ivory was injured on January 23, 2003. At the hearing, Tara Shelton (Shelton), State Risk Claims Adjuster, Three, with the Office of Risk Management, testified that Ivory did not return to work following her work-related accident. She further testified that she did not know why the first payment of benefits was not paid until February 19, 2003. Pursuant to La.R.S. 23:1201(B), the first payment was due fourteen days after Southwest had knowledge of Ivory's injury which, according to the Employer Report of Injury/Illness form, was January 23, 2003. Given this untimely payment, we find that Southwest was properly assessed with a penalty.[8]

We note that at the time payment was due on February 6, 2003, La.R.S. 23:1201(F) provided:

_____

[8] We note that the judgment states that the total penalty for the late payment of weekly compensation benefits is $1,650.00. There are three late payments in question; however, the workers' compensation judge did not assess a separate penalty for each late payment. Therefore, we will determine the correct penalty for each late payment.

13

F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

Because Ivory's benefits were not paid until February 19, 2003, they were thirteen days late. The appropriate penalty was $50.00 for each day in which compensation remained unpaid. Accordingly, the appropriate penalty for an untimely first payment of benefits is $650.00.

Two Subsequent Late Payments

At the hearing, Ivory contended that the check for the period of July 19, 2004 to August 1, 2004 was eleven days late. Additionally, Ivory alleged that a check covering the time period April 11, 2005 to April 18, 2005 was nine days late. Ivory asserts that the penalty award was appropriate.

Ivory submitted into evidence the check which covered the July 19, 2004 to August 1, 2004 time period. She argued that it was erroneously mailed to Southwest's address and that it was not paid until August 12, 2004. At the hearing, counsel for Ivory maintained that he also had "the envelope where it was sent to my office from Southwest[.]"

The copy of the check shows a handwritten notation at the bottom of the page which states, "Mailed to Southwest Dev. Ctr. in Error." Nevertheless, as pointed out by Southwest in brief, there is no indication as to the source of this notation. Furthermore, Ivory failed to submit the evidence indicating that the check was sent to Southwest and then re-routed to her counsel. Therefore, we find that Ivory did not present sufficient evidence that this check was, as she claims, eleven days late.

14

Accordingly, we conclude that no penalty should have been assessed for the check covering this time period.

As for the second check, Southwest does not dispute that it was untimely paid insofar as it asserts that the "check covering the time period April 11, 2005 to April 18, 2005 was nine days late." Thus, we find that the appropriate penalty is $450.00.

In sum, we hereby find that the correct penalties total $3,100.00 and, accordingly, Southwest is ordered to pay such amount.[9]

*Attorney Fees*

According to Southwest, the affidavit submitted by Ivory's counsel "does not substantiate his claim that 87 hours were spent in preparing this case for trial. The affidavit lacks the necessary detail regarding the amount of time spent on the various activities listed by counsel[.]" Southwest "contends the claimant has not prevailed on the primary issue, *i.e.*, the correctness of the average weekly wage and weekly indemnity rate."

In her oral reasons for ruling, the workers' compensation judge explained:

> And the attorney's fee. I'm going to award Ten Thousand Dollars based on the affidavit. Mr. Miller prevailed on most issues. Not all, but most. And I know both attorneys have spent a lot of time in this matter, and I think that comes to a little over A Hundred Dollars an hour for the hours established in the affidavit.

The workers' compensation judge is given great discretion in awarding attorney fees, and this award will not be overturned on appeal unless clearly wrong. *Semere v. Our Lady of Lourdes Hosp.*, 03-1702 (La.App. 3 Cir. 6/9/04), 875 So.2d 1048. In *Semere*, this court explained:

---

[9] Southwest does not dispute the $2,000.00 penalty for the untimely failure to reinstate benefits. This penalty combined with the penalties for late payment of benefits results in a total penalty award of $3,100.00.

While the legislature has set statutory limits on the amount of penalties which may be awarded, the legislature has made no such limitation on the amount of attorney fees which may be awarded. *See* La.R.S. 23:1201. The legislature's only mandate is that such attorney fees be reasonable. In setting reasonable attorney fees, the supreme court has advised us to consider "the degree of skill and ability exercised, the amount of the claim, and the amount recovered for the plaintiff, and the amount of time devoted to the case."

*Id.* at 1057. We have reviewed the affidavit submitted by counsel for Ivory. Although counsel did not specifically state the amount of time spent performing each activity, he avers that he spent a total of eighty-seven hours working on this case and that he earned a non-contingent hourly fee of $225.00 per hour. The affidavit reveals that counsel drafted various correspondence, filed numerous pleadings, and examined Ivory's medical records. Thus, we conclude that the workers' compensation judge did not abuse her discretion in awarding $10,000.00 in attorney fees.

Ivory answered the appeal seeking additional attorney fees for work performed on appeal. We award $2,500.00 for work performed on appeal.

**DECREE**

For the foregoing reasons, the ruling of the workers' compensation judge is reversed in part and affirmed as amended in part, and rendered. We reverse the finding of the workers' compensation judge that the weekly compensation rate is $191.67. Accordingly, we also reverse the penalty associated with the compensation rate. We amend the compensation rate to $173.87. Further, we amend the total penalty award from $5,650.00 to $3,100.00. In all other respects, the ruling of the workers' compensation judge is affirmed. Additional attorney fees for work performed on appeal in the amount of $2,500.00 are awarded to Ivory. Costs of this

appeal are assessed equally between the plaintiff, Wanetta Ivory, and the defendant,

Southwest Developmental Center.

**REVERSED IN PART, AFFIRMED AS AMENDED IN PART, AND RENDERED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**

17