## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**16-656**

**KIRK A. SPARROW**

**VERSUS**

**CITY OF JEANERETTE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 09
PARISH OF IBERIA, NO. 15-04591
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART AND REVERSED IN PART.**

Christopher R. Philipp
Attorney at Law
P.O. Box 2369
Lafayette, LA 70502
(337) 235-9478
COUNSEL FOR DEFENDANT/APPELLANT:
    City of Jeanerette

Dustin G. Flint
Williamson, Fontenot, Campbell & Whittington, LLC
955 McClung
Baton Rouge, LA 70802
(225) 383-4010
COUNSEL FOR PLAINTIFF/APPELLEE:
    Kirk A. Sparrow

**GREMILLION, Judge.**

The City of Jeanerette appeals the judgment of the Workers' Compensation Judge (WCJ) in favor of Kirk A. Sparrow, which awarded Mr. Sparrow temporary total disability benefits (TTD), medical expenses, penalties, and attorney fees. For the reasons that follow, we affirm in part and reverse in part.

## FACTS

Mr. Sparrow was employed by the City as a laborer on January 7, 2015, when he allegedly injured his back. Mr. Sparrow's fiancé suffers from a seizure disorder, and on that day he was late for work because his fiancé had suffered a seizure. He testified that, on January 7, he and his crew were deployed to the city barn to cut old utility poles into two- to two-and-a-half-foot sections for burial. According to Mr. Sparrow, he lifted a section of pole and felt "a pull" in his back. He emitted an exclamation of some sort, which he is certain others on his crew overheard.

That Mr. Sparrow yelled after lifting a section of pole was corroborated by his fellow employee, Mr. Cornell Penny, who was standing beside Mr. Sparrow when this occurred and testified that he not only heard Mr. Sparrow yell, but also had heard his back pop. Mr. Penny also testified that Ms. Elizabeth "Cindy" Moore, who was nearby, also heard this, because she asked Mr. Sparrow if he was all right and told their supervisor, Ms. Gwen Colar, that he was injured.

The testimonies of Mr. Sparrow and Mr. Penny were categorically contradicted by the deposition testimonies of Ms. Moore, Ms. Colar, and Ms. Elaine Thomas, who each denied that Mr. Sparrow had lifted as much as a single piece of wood; in Ms. Colar's words, "He never once picked nothing up." All three of the ladies recall Mr. Sparrow stating that his back was already injured and that he went to the barn and retrieved a dolly onto which to load the sections.

Mr. Edward Broussard, though, did see Mr. Sparrow lift a section of pole. He also noticed that Mr. Sparrow was acting injured. Mr. Broussard asked if he was all right, and Mr. Sparrow replied that he hurt his back.

The next morning, Mr. Sparrow testified, he awoke and was unable to move because of his back pain. He further testified that he phoned the city barn secretary, Ms. Roberta Charles, and Ms. Colar, and told them he had injured his back the day before. Ms. Colar told Mr. Sparrow to go to the doctor and bring in "papers," which Mr. Sparrow interpreted as requiring that he bring a doctor's excuse.

Mr. Sparrow, though, did not seek medical attention for his back until January 16, 2015, when he saw Dr. Ruth Smothers of the Iberia Comprehensive Community Health Center in New Iberia, Louisiana. Dr. Smothers ordered X-rays and MRIs of Mr. Sparrow's lumbar spine. The MRIs, though, were postponed. On January 21, Dr. Smothers referred Mr. Sparrow to outpatient rehabilitation at Iberia Medical Center. On March 11, 2015, Dr. Smothers ordered MRIs because Mr. Sparrow was not responding to physical therapy. Those MRIs were never taken.

Mr. Sparrow presented to Dr. Smothers on April 10, 2015, with his original complaint of low back pain and a new complaint of pain in his shoulders. Dr. Smothers examined Mr. Sparrow's shoulders and diagnosed him with rotator cuff sprain; however, she did not specify whether this was left, right, or bilateral.[1]

Initially, Dr. Smothers issued a "Certificate to Return to Work/ School" indicating that Mr. Sparrow was under her care from January 7, 2015 through January 21, 2015, and could return to full duty on January 22, 2015. A second certificate returned Mr. Sparrow to work with restrictions as of February 11, 2015. A third certificate indicated that between February 12, 2015 and April 14, 2015, Mr. Sparrow continued under Dr. Smothers' care and was able to return to work without restrictions on April 15, 2015.

---

[1] We note, however, that Mr. Sparrow withdrew his claim regarding any injury to his shoulder(s).

2

The City claims that the first notice it received that Mr. Sparrow was claiming entitlement to workers' compensation benefits was its receipt of a letter of representation from his attorney on April 15, 2015. The next information the City received were the aforementioned January and February certificates from Dr. Smothers. The City obtained written statements from the members of Mr. Sparrow's crew. Because Mr. Sparrow's claim was already filed with the Office of Workers' Compensation, the third-party administrator for the City assigned the matter to counsel. Based upon the handwritten statements from his co-employees, the City denied Mr. Sparrow's claim.

Following trial, the WCJ ruled in favor of Mr. Sparrow and awarded him: weekly indemnity of $175.14 from January 7 through April 15, 2015; reimbursement for out-of-pocket expenses for January 15, 2015, March 11, 2015, and April 10, 2015, all from Iberia Comprehensive Clinic totaling $85.00; reimbursement for his insurance co-pay for March 31, 2015 in the amount of $6.35; reimbursement for his co-pay/deductible to Radiology Associates of Acadiana in the amount of $17.35; entitlement to return to Dr. Smothers and to obtain the lumbar MRI; a $1,000.00 penalty for failing to investigate his claim "once reported at the scene"; a $1,000.00 penalty for "failure of the supervisors to properly investigate the claim once medical slips were submitted"; a $2,000.00 penalty for failure to pay weekly indemnity benefits; a $2,000.00 penalty for failure to pay medical benefits; and $10,000.00 in attorney fees. This appeal followed.

## ASSIGNMENTS OF ERROR

The City assigns the following errors:

1. The Trial Court committe[d] legal error in ordering the defendant to pay for the balance of the plaintiff's treatment in the amount of $6.39 for the date of service March 31, 2015. This is the balance of the radiology bills by Drs. David Fontenot and John LeMieux. See Plaintiff Exhibit No. 3. This treatment was done at Iberia Medical Center. See Defendant Exhibit No. 9, pgs. 65 - 75, and was for x-rays of the plaintiff's cervical spine and right shoulder. The plaintiff

3

initially made a claim for this, but withdrew this claim during trial (after an ALFAC [sic] claim form signed by the plaintiff indicated this injury was caused by lifting a T.V. on January 31, 2015). Record, p. 262.

2. The Trial Court committed legal error when it ordered the defendant to pay for the plaintiff's medical treatment at Iberia Comprehensive Clinic on April 10, 2015. This treatment was for the plaintiff's shoulder pain. See Defendant Exhibit No. 5, pgs. 21 - 22. This part of the claim was withdrew [sic] by the plaintiff at trial. Record, p. 262.

3. The Trial Court committed legal error when it awarded the plaintiff disability benefits from January 7, 2015 through April 14, 2015. No one ever restricted the plaintiff from working from January 7, 2015 through January 16, 2015 (the date of his first medical treatment by Dr. Smothers[)]. Furthermore, Dr. Smothers released the plaintiff to return to work doing full duty without restrictions on January 22, 2015. See Defendant Exhibit No. 16, Deposition Exhibit No. 5.

4. The Trial Court committed manifest error and was clearly wrong when it ruled that the plaintiff met his burden of proving that he had an accident in the course of and arising out of his employment on January 7, 2015.

5. The Trial Court committed manifest error and was clearly wrong when it determined that the plaintiff injured his back during a work place accident on January 7, 2015.

6. The Trial Court committed manifest error and was clearly wrong when it determined the plaintiff was entitled to temporary total disability benefits from January 7, 2015 through April 14, 2015.

7. The Trial Court committed manifest error and was clearly wrong when it determined that the plaintiff was entitled to all reasonable and necessary medical treatment for his back.

8. The Trial Court committed manifest error and was clearly wrong when it awarded penalties and attorney fees.

## ANALYSIS

"The manifest error standard of review applies to the findings of the WCJ in workers' compensation cases. The court must review the record in its entirety and determine whether the record reasonably supports the WCJ's conclusions. Reasonable evaluations of credibility are afforded great weight, and when the evidence is disputed, a fact-finder's conclusions "can virtually never be manifestly erroneous." *Purvis v. Grant Parish Sch. Bd.*, 13-1424, p. 6 (La. 2/14/14), 144 So.3d 922, 926.

*Meche v. Gray Ins. Co.*, 15-465, pp. 3-4 (La.App. 3 Cir. 11/12/15), 178 So.3d 640, 642-43. (Other citations omitted).

4

Because the overarching issue upon which all workers' compensation claims are founded is the occurrence of an "accident," we will address the City's assignment of error numbers four and five first. *See* La.R.S. 23:1031(A). The determination that a workers' compensation claimant has carried his burden of proof is also reviewed under the manifest error standard. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). As noted above, the Louisiana Supreme Court in *Purvis*, 144 So.3d at 926 stated, "Where the fact-finder's determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous." Here, there was an almost even split in the number of witnesses who saw (and heard) Mr. Sparrow actually injure his back, and those who claimed that he performed no more work than procuring a dolly on which to load the pole sections. It is difficult to imagine a case to which the supreme court's quoted admonition in *Purvis* more appropriately applies. These assignments of error lack merit.

In its first and second assignments of error, the City complains that it was ordered to pay for medical expenses for a condition not causally related to the workers' compensation claim, i.e., Mr. Sparrow's shoulder complaints. With regard to the City's first assignment of error, we agree with the City that this charge of $6.39 represents charges for X-rays of Mr. Sparrow's shoulder. That portion of the judgment is reversed.

However, with regard to its second assignment of error, the City is not correct. Dr. Smothers' records reflect that Ms. Sparrow's chief complaints on that day were, "Pt. is here for back/ shoulder pain." We find no manifest error in the WCJ's conclusion that Mr. Sparrow's back pain is causally related to his on-the-job accident, and he is entitled to medical treatment resulting from that. The City's second assignment of error also lacks merit.

5

Assignments of error three and six duplicate each other. They address the award of TTDs. The WCJ based her ruling upon the three Certificates to Return to Work/School issued by Dr. Smothers. These certificates could have been more artfully drafted; yet, they state that Mr. Sparrow had been treated between the pertinent dates and that as of April 15, 2015, Mr. Sparrow was able to return to work without limitation. While they do not explicitly state that during the dates of treatment, Mr. Sparrow was not able to work, we cannot say that the WCJ erred in drawing the very reasonable inference implicit therein. These assignments lack merit.

Assignment of error seven addresses whether Mr. Sparrow is entitled to all reasonable and necessary medical treatment for his back injury. Under La.R.S. 23:1031(A), if an employee "receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons" designated by the Workers' Compensation Act. Louisiana Revised Statutes 23:1203(A) mandates that the employer "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services." In this case, the records reflect that Dr. Smothers ordered MRIs of Mr. Sparrow's back. These have not been performed. Under La.R.S. 23:1203(A), an employer's duty to furnish reasonable medical care exists independent of a finding that the employee is eligible for disability benefits. Because he was injured in an accident arising from and in the course and scope of his employment, Mr. Sparrow is entitled to such care. Assignment of error seven lacks merit.

Lastly, we turn to assignment of error number eight, which challenges the awards of penalties and attorney fees. Louisiana Revised Statutes 23:1201(F) governs the imposition of penalties and attorney fees. Subsection (2) thereof exempts the

6

employer from penalties and attorney fees "if the claim is reasonably controverted." The threshold for reasonably controverting a claim is low. A claim has been reasonably controverted when the employer "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

With regard to the penalty and attorney fee issue, the WCJ concluded that Mr. Sparrow reported the accident, and that he received medical attention for his injury. Those are manifest error findings of fact and we find no manifest error in the WCJ's decision in that regard. Additionally, it is undisputed that the employer did not obtain statements from the other employees, or even consider the medical reports, until receipt of notice of representation in April of 2015. Had the City done so, it would have found that Mr. Sparrow was asserting an accident and it should have investigated. The employer cannot simply sit on information and hope the whole thing goes away. Absent an investigation into an employee's claim, an employer can hardly be said to have possessed factual and/or medical information to reasonably counter the employee's claim. Accordingly, we affirm the WCJ's award of penalties and attorney fees.

## CONCLUSION

Kirk A. Sparrow injured his low back while working for the City of Jeanerette on January 7, 2015. He is entitled to all reasonable medical expenses attendant to that injury. Those medical expenses do not include the $6.39 charge for X-rays of Mr. Sparrow's shoulder, and we reverse that portion of the judgment. Mr. Sparrow was entitled to weekly indemnity benefits for his temporary total disability from that date through his release to return to work on April 15, 2015, at the rate of $175.14. The

awards of penalties and attorney fees are affirmed. Trial and appellate costs in the amount of $1,963.17 are assessed to the City of Jeanerette.

**AFFIRMED IN PART AND REVERSED IN PART.**

8