# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-588


**JAMES H. EVANS, JR.**

**VERSUS**

**INTERNATIONAL PAPER COMPANY**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF NATCHITOCHES, NO. 17-03590
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

Jason R. Bonnet
Marc E. Devenport
Lee M. LeBouef
Leake & Andersson
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
(504) 585-7500
COUNSEL FOR DEFENDANT/APPELLANT:
    International Paper Company

Richard Bray Williams
Williams Family Law Firm, LLC
P. O. Box 15
Natchitoches, LA 71458-0015
(318) 352-6695
COUNSEL FOR PLAINTIFF/APPELLEE:
    James H. Evans, Jr.

**GREMILLION, Judge.**

International Paper Company (IP) appeals the judgment in favor of James H. Evans, Jr., that awarded Mr. Evans temporary total disability benefits (TTD), with weekly indemnity benefits subject to a credit for Mr. Evans' receipt of short-term disability benefits; that found Mr. Evans in need of further surgery; that awarded Mr. Evans $53,590.42 in past medical expenses; that cast IP with all costs; and that denied Mr. Evans' demand for penalties and attorney fees. Mr. Evans has answered the appeal seeking reversal of the Workers' Compensation Judge's (WCJ) denial of penalties and attorney fees and seeking additional attorney fees for this appeal. For the reasons that follow, we affirm and award Mr. Evans attorney fees in the amount of $3,000.00 for appeal.

## FACTS

Mr. Evans was employed by IP at its facility in Campti, Louisiana, on Friday, June 17, 2016, when he claims he began to experience pain in his left leg. He was initially seen at the emergency room at Christus Coushatta Health Care Center, where he was diagnosed with shin splints. Later, Mr. Evans sought treatment with the doctors of Orthopedic Specialists of Louisiana in Bossier City, who diagnosed him with a stress fracture or stress reaction in his left tibia. Subsequently, Mr. Evans' tibia fractured at his home, and he required surgery to fix the fracture, which involved the installation of an intermedullary nail and screws. Mr. Evans claims to continue to experience problems with his left leg that he asserts prevent him from working. His primary orthopedic surgeon, Dr. Val Irion of Orthopedic Specialists, has recommended a surgery to remove the intermedullary nail and screws now that the fracture is healed.

There is no dispute that, prior to filing his Disputed Claim for Compensation Form 1008, which initiated his claim for workers' compensation benefits, Mr. Evans had not filed a formal accident or incident report as required by IP's internal policies and procedures. Mr. Evans did not file his claim for compensation until June 12, 2017, almost a year after his injury. Before filing his claim, Mr. Evans had taken time from work pursuant to Family and Medical Leave Act (FMLA) protections and had received benefits from a short-term disability policy he had procured through IP. His medical bills had been paid by his group health insurance, also procured through IP.

IP denied Mr. Evans' claim for compensation, arguing that it was not notified of any compensable injury until shortly before the expiration of Mr. Evans' health insurance benefits. The matter proceeded to trial before the WCJ. Only Mr. Evans and Claire Wimbiscus, IP's Human Resources Manager, gave live testimony. The depositions of several other witnesses, including Dr. Irion, were introduced. The following represents the testimonies given at trial or in deposition.

Mr. Evans testified that, on June 17, 2016, he was following Ronnie Comick, a maintenance oiler who was training Mr. Evans on preventive maintenance tasks in the paper machine number 2 area of the plant. When Mr. Evans complained of leg pain, Mr. Comick suggested that Mr. Evans wait for him to climb the several flights of stairs the duo were to ascend in order to access the "save-all" area where they were to conduct some preventive maintenance. Mr. Evans, though, insisted on making the ascent but had to be assisted by Mr. Comick to descend the stairs. Mr. Comick recalled Mr. Evans telling him his leg was hurting before they ascended the "save-all," while Mr. Evans recalls telling Mr. Comick after they ascended to the "save-all." They had begun their workday in what is referred to as the basement, but

2

is actually ground level. Both Mr. Comick and Mr. Evans testified that Mr. Evans' first complaints were voiced at least an hour into the workday.

At or around the lunch break, Mr. Evans told his department's Safety Captain, Roderick Williams, that his leg was bothering him. Mr. Williams advised Mr. Evans to go sit in the "clamp truck shop," but then reconsidered because Mr. Evans was not assigned to the clamp truck shop. Instead, Mr. Williams had Mr. Evans sit in an area on the main floor of the plant. Mr. Williams and Mr. Comick were able to complete their assigned duties as well as Mr. Evans' duties. At no time on Friday did Mr. Evans file an accident report. Mr. Evans testified that he reported his injury to Craig Wade, his supervisor on Friday.

Over the weekend, Mr. Evans rested and elevated his leg but continued to experience problems. On Monday, June 20, Mr. Evans called Mr. Wade and told him he was having problems with his leg. Mr. Wade testified that this was the first indication that Mr. Evans had injured his leg. He assumed that Mr. Evans had hurt his leg over the weekend because the events of Friday, June 17, had not been reported to him and in the conversation of Monday, June 20, Mr. Evans did not tell Mr. Wade that his leg pain had begun while on the job.

Mr. Wade advised Mr. Evans to seek medical attention and testified that he thought that he also advised Mr. Evans to file an FMLA request on that same date. Mr. Evans went to the emergency room at Christus Coushatta Health Care Center. The personnel there diagnosed him with shin splints and advised him to elevate and ice his leg.

On Tuesday, June 21, Mr. Evans returned to the IP plant, but was still experiencing leg pain. He went to the nurse's station at the plant but found no one there. He attended the morning "breakout" meeting but decided that his pain was

too great to allow him to work. He testified that he informed Mr. Wade and Mr. Williams of this, then prevailed upon Otis Farley, a millwright mechanic assigned to the clamp truck shop, to drive him to the gate. Mr. Farley recalled in his testimony that this was on Monday, June 20.

Mr. Comick, Mr. Williams, and Mr. Farley all testified that they have not be asked by anyone at IP about Mr. Evans' injuries or other matters related to the claim.

Mr. Evans then sought treatment with Orthopedic Specialists. He was seen on June 21 by Dr. Clinton McAlister, who diagnosed him with a stress fracture versus periostitis and prescribed a Medrol dosepak and an MRI. On June 27, Mr. Evans was seen by Dr. Michael Acurio, a partner of Dr. McAlister, who also felt Mr. Evans had a stress fracture. The MRI, taken on June 30, confirmed a stress fracture or stress reaction in Mr. Evans' left tibia. Mr. Evans was put on crutches and was to return to Dr. Acurio had the leg not completely fractured on July 4, 2016, at Mr. Evans' home. Mr. Evans went to the emergency room at Willis-Knighton Hospital in Shreveport, where he was seen by Dr. Irion, who performed the surgery on July 5 to fix the fracture. Dr. Irion has assumed Mr. Evans' care since the surgery.

The records of Christus Coushatta and or Orthopedic Specialists are, however, devoid of any reference to the left leg injury being work-related.

According to Dr. Irion, the most common cause of a stress reaction is a recent increase in workload or exercise activity. Stress reactions are also common among individuals with misaligned bones and obesity, and Mr. Evans presented with both of those conditions. He also had experienced a recent increase in the amount of walking and stair-climbing he was required to do at work. These three factors led Dr. Irion to relate the stress reaction to Mr. Evans' work. The fracture of the left tibia was secondary to the stress reaction. He has recommended an additional

4

surgery to remove the intermedullary nail and screws to alleviate the pain Mr. Evans continues to experience in his left leg.

The WCJ issued oral reasons that were read into the record in this matter. Mr. Evans, the WCJ found, was a "highly credible" witness. The testimonies of the various witnesses, the WCJ also found, corroborated Mr. Evans' claim that he sustained an injury on June 17, 2016, while at work at IP. The WCJ then cited several cases that he found supported his determination that Mr. Evans' injury was compensable. The WCJ then ruled as outlined above. Following the signing of judgment, this appeal was lodged by IP.

## ASSIGNMENTS OF ERROR

IP asserts the following as errors on appeal:

1. The Trial Court committed error when he found that Claimant, James Evans, proved that his injury was the result of the occurrence of an "accident" as defined by La. R.S. 23: 1021(1), which occurred in and/or arose out of the course and scope of his employment with International Paper Company.

2. The Trial Court committed error when it awarded Claimant $53,590.42 in medical expenses already paid by a third-party insurer, CIGNA, who was a solidary obligor with IP, with regard to the relevant medical expenses, and pursuant to La. R.S. 23:1212 and La. R.S. 1205, payment by CIGNA extinguished the obligation of IP to reimburse Claimant for these expenses.

3. The Trial Court committed error in by [sic] calculating Claimant's average weekly wage to include a "regular" and "overtime" average weekly wage to determine that his total average weekly wage is $1,097.69.

Mr. Evans asserts that the WCJ manifestly erred in not awarding him penalties and attorney fees.

## ANALYSIS

*IP's first assignment of error:*

An employee is required to prove that he sustained injury in an "accident arising out of and in the course of his employment" to receive workers'

5

compensation benefits. La.R.S. 23:1031(A). Whether an accident has occurred is viewed from the employee's perspective. *Bruno v. Harbert Intern. Inc.*, 593 So.2d 357 (La.1992). The requirement has always been interpreted by our courts liberally. *Id.* Furthermore, an accident can occur "when 'heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.'" *Id.* at 360 (quoting *Cutno v. Neeb Kearney & Co.,* 237 La. 828, 112 So.2d 628, 631 (1959)). A worker's testimony can discharge his burden of proof as long as it is supported by corroborating circumstances and no other evidence casts serious doubt on his testimony. *Id.* Corroboration can take the form of testimony from fellow employees or medical evidence. *Id.*

The determination that an employee has carried his burden of proof is a factual finding subject to reversal only if it is clearly wrong or manifestly erroneous, even when that finding is based solely upon records or depositions. *Id.* Under the manifest error standard, the appellate court must look at the record in its entirety and give great deference to the trier of fact's determination. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 844.

In the present case, Mr. Evans testified that he began to experience left leg pain as he was ascending the save-all stairs. Mr. Comick recalled him complaining of his leg before they began the ascent. Both recall the complaints beginning after the pair had been working for some time. Mr. Williams recalls Mr. Evans complaining of leg pain on June 17, 2016.

Mr. Evans did not complete an accident or incident report as required by IP's policies and procedures. There was a dispute in the testimony over whether he informed Mr. Wade, who was technically his supervisor, of the injury on June 17, 2016. Mr. Evans did tell Mr. Wade on Monday, and Mr. Wade assumed that the injury had occurred over the weekend. Mr. Comick knew of the injury, as did Mr. Williams, the Safety Captain; when asked about whether Mr. Comick was his supervisor, Mr. Evans replied that Mr. Comick was training him, which reflects an ambiguity over their relationship that might lead one to conclude that Mr. Comick was a supervisor in a real sense, if not in the eyes of IP.

When his incident occurred, Mr. Evans did not follow company procedures in reporting his injury. Instead, he continued to work as much as he could. After the weekend of rest and elevation did not alleviate Mr. Evans' pain, he contacted Mr. Wade on Monday, June 20. Mr. Wade quite reasonably assumed that Mr. Evans had injured his knee over the weekend, as he was not informed otherwise by Mr. Evans. Mr. Evans sought treatment shortly after the incident. His treatment continued through the fracture of his left tibia and subsequent surgery. His treating orthopedic surgeon related the left tibia stress reaction to Mr. Evans' job responsibilities and the fracture to the stress reaction.

Given these circumstances, we find that the WCJ did not err in finding that Mr. Evans carried his burden of proving an "accident."

*IP's second assignment of error:*

IP complains that the WCJ erred in awarding past medical expenses to Mr. Evans because those expenses had been paid by CIGNA, Mr. Evans' health insurer, which insured him through a group health plan to which IP had contributed. The

right to a medical expense offset is governed by La.R.S. 23:1212, which reads, in pertinent part:

> Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.

The WCJ found that IP had not properly pleaded the offset because it listed a number of statutory offsets that did not include La.R.S. 23:1212. In *Alford v. Acadian Ambulance Service, Inc.,* 96-639 (La.App. 3 Cir. 11/6/96), 682 So.2d 942, this court ruled that the provisions of La.R.S. 23:1212 must be pleaded as any other affirmative defense and proven by competent evidence. Further, the competent evidence must include the percentages contributed toward the premiums by the employee and employer.

IP maintains that it properly pleaded the defense of extinguishment. IP pleaded several affirmative defenses. First, it pleaded the provisions of La.R.S. 23:1208 and 1208.1. These statutes govern misrepresentations concerning benefit payments and previous injuries that might affect the employer's ability to receive reimbursement from the second injury fund and do not apply to Mr. Evans' claim. IP also pleaded benefit of credits and offsets for other amounts Mr. Evans may have earned under the provisions of La.R.S. 23:1221(3) governing supplemental earnings benefits, which also do not apply.

Next, IP "assert[ed] all rights to reduce benefits (if any are paid) as provided under the Louisiana Worker's [sic] Compensation Act, including but not limited to

La. R.S. 23:1101, 1102, 1103 [governing suits against third parties whose negligence causes injury to a worker], 1206, 1206.1 [voluntary payments or unearned wages paid by the employer or insurer and payments made to one of several rival claimants], 1223 [offsets for payments made], 1225 [offsets for Federal Old Age, Survivors, and Disability Insurance Benefits or unemployment compensation benefits] and 1226 [refusal to cooperate in the vocational rehabilitation process]." These provisions find no application to the present matter. IP pleaded the benefits of La.R.S. 23:1142, which governs the approval of healthcare provider fees in certain situations, but not when the employer, such as IP, has denied that the employee's injury is compensable. This provision is explicitly excluded from applying to the present matter.

Lastly, IP "aver[red] any and all other affirmative defenses enumerated in Louisiana Code of Civil Procedure Article [1005] and/or any other jurisprudentially recognized affirmative defenses." "An affirmative defense must be *specifically* pled in the answer." *Biglane v. Bd. Of Comm'rs, Fifth La. Levee Dist.*, 18-100, 18-101, p. 5 (La.App. 3 Cir. 9/26/18), 256 So.3d 1052, 1057, *writ denied*, 18-1767 (La. 1/8/19), 260 So.3d 588 (emphasis added). Nowhere in its answer did IP specifically raise extinguishment as an affirmative defense. None of the affirmative defenses it did plead relate in any way to extinguishment of the obligation to furnish medical treatment or pay for that treatment. This assignment of error lacks merit.

*IP's third assignment of error*

In its final assignment of error, IP complains of the WCJ's calculation of Mr. Evans' average weekly wage (AWW) to be $1,097.69.[1] IP contends that the WCJ

---

[1] This figure appears to have been based upon a "Notice of Payment, Modification, Suspension, Termination or Controversion of Compensation or Medical Benefits" form filed by IP's third-party administrator, Sedgwick Claims Management Services, which states that as Mr. Evans' AWW.

9

impermissibly included regular and overtime pay in a manner that inflated Mr. Evans' wages. According to IP, totaling Mr. Evans' actual work hours over the previous four full weeks before his injury, he did not even work a full forty hours per week:

| | |
|---|---|
| May 16-20 | 40.47 hours |
| May 23-27 | 46.55 hours |
| May 30-June 3 | 24.28 hours |
| June 6-10 | 47.28 hours |

Thus, multiplying his hourly pay rate, $20.78, by forty hours yields an average weekly wage of $831.20, IP argues. However, we note that the week of May 30-June 3 included "holiday" pay for eight hours at $20.87/ hour, and Mr. Evans did not clock in at all on June 1, either. That is not a "full week" for purposes of calculating AWW. *See Ivory v. Sw. Developmental Ctr.*, 07-1201 (La.App. 3 Cir. 3/5/08), 980 So.2d 108

The intent of La.R.S. 23:1021(13)(a)(i), which governs the calculation of AWW for hourly workers, is to approximate the average number of hours an hourly employee works in a typical week, which is deflated when one includes a week that includes a holiday.[2] Our calculations, based solely upon the time records IP entered into the record, do not reflect its calculations. Even IP's time records credit Mr. Evans for an eight-hour day on May 30, but that does not explain our differences, either. Our review of the time records shows the following work week totals:

| | |
|---|---|
| May 16-20 | 42.97 hours |
| May 23-27 | 50.05 hours |
| May 30-June 3 | 33.78 hours[3] |

---

[2] May 30, 2016 was Memorial Day.
[3] Including the eight hours credited to Mr. Evans for the Memorial Day holiday.

| June 6-10 | 52.82 hours |
| TOTAL | 179.62 hours |

Further, the payroll records show that Mr. Evans earned a "shift differential" at times. In some periods, he was paid $20.87 per hour; at others, he earned $21.13 per hour, and yet others, he was paid $21.33 per hour. Mr. Evans' overtime pay rate also varied.

At a minimum, though, we calculate Mr. Evans' AWW as totaling $984.24.[4] Two-thirds of that exceeds the maximum weekly indemnity rate of $649.00 per week in effect through August 31, 2016. The WCJ's calculation of AWW was erroneous, but that error was harmless because it does not affect Mr. Evans' rate of compensation. This assignment of error lacks merit.

*Penalties and attorney fees*

Mr. Evans appealed the WCJ's denial of penalties and attorney fees.

Louisiana Revised Statutes 23:1201(F) governs the imposition of penalties and attorney fees. Subsection (2) thereof exempts the employer from penalties and attorney fees "if the claim is reasonably controverted." The threshold for reasonably controverting a claim is low. A claim has been reasonably controverted when the employer "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.,* 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

*Sparrow v. City of Jeanerette*, 16-656, pp. 6-7 (La. App. 3 Cir. 12/21/16), 210 So. 3d 460, 465-66. In addressing Mr. Evans' demand for penalties and attorney fees, the WCJ stated:

There's no clear evidence to this Court's view that Mr. Evans actually reported to anyone at International Paper, "Hey, climbing those stairs, my leg began hurting." He just simply told them that his leg was

---

[4] 179.62 hours/4= 44.91 hours per week average. 40 hours @ $20.78/ hour = $831.20 + 4.91 hours @ $31.17/ hour = $153.04 overtime, for a total AWW of $984.24.

11

hurting on that day, and I guess they were supposed to divine from that it must have been some activity he was performing.

Given the fact that roughly a year had passed, International Paper was in a pretty deep hole trying to conduct an adequate investigation. When you look at the testimonies of the co-employees and the timing they gave about when Mr. Evans began to complain about a pain, the fact that it was on the first floor was before he ever climbed any stairs, and he asserts in his claim that this occurred going up and downstairs [sic]. And then a review of the medical records indicating that there's no indication given to the health care providers that he hurt his leg while performing his job activities. Now, the records do reflect his leg began hurting three days before he sought medical care, which would have placed him on the June 17th date of 2016, but those records don't say where he was when his leg started hurting. For all anyone knew from looking at those records, his leg might have started hurting while he was at home.

"The decision to assess penalties and attorney fees is a question of fact that is in the great discretion of the WCJ, and it should not be reversed on appeal absent manifest error." *Jeansonne v. Dep't of Pub. Safety and Corr., Youth Servs., Office of Juvenile Justice*, 17-635, p. 9 (La.App. 3 Cir. 6/6/18), 247 So.3d 893, 900-01, *writ denied*, 18-1148 (La. 10/29/18), 254 So.3d 1209. We find no manifest error in the WCJ's determination for the reasons he gave and for the reasons stated above addressing IP's first assignment of error. The decision to deny penalties and attorney fees is affirmed.

"Ordinarily, an employee is entitled to additional attorney fees for successfully defending a workers' compensation judgement on appeal." *Mayes v. Deep S. Chem., Inc.*, 11-91, p. 6 (La.App. 3 Cir. 6/1/11), 66 So.3d 65, 70. This can be warranted even when no penalties or attorney fees are awarded by the WCJ. *See Meche v. Gray Ins. Co.*, 15-465 (La.App. 3 Cir. 11/12/15), 178 So.3d 640. Mr. Evans has successfully defended the WCJ's judgment on appeal, and we award him $3,000.00 in attorney fees.

## CONCLUSION

Whether an "accident" has occurred is judged from the employee's perspective and can include the failure of a body part that arises from and in the course of his employment. The WCJ found that Mr. Evans proved that his left knee fracture occurred while performing his responsibilities for IP. There is no error in this finding. IP failed to plead the affirmative defense of extinguishment of its obligation to pay past medicals. The WCJ relied upon the figure given by the third-party administrator of IP to determine Mr. Evans' AWW; although we find this was manifestly erroneous, that error is harmless as the indemnity owed Mr. Evans for his true AWW exceeds the maximum indemnity available. We affirm the WCJ's decision to deny penalties and attorney fees, as IP did reasonably controvert Mr. Evans' claim; however, we award Mr. Evans $3,000.00 in attorney fees on appeal for successfully defending the judgment.

**AFFIRMED.**